JUSTIN D. WHATCOTT, IDAHO STATE BAR NO. 6444
ACTING UNITED STATES ATTORNEY
SEAN M. MAZOROL, DISTRICT OF COLUMBIA BAR NO. 90025737
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
1290 W. MYRTLE ST. SUITE 500
BOISE, ID 83702-7788
TELEPHONE: (208) 334-1211

U.S. COURTS
AUG 1 3 2025
Rcvd______ Filed______ Time______
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>FNU LNU, a/k/a<br>CARLOS RAMON OBREGON,<br><br>Defendant. | Case No. 4:25-cr-249-DCN<br><br>**INDICTMENT**<br><br>18 U.S.C. § 2<br>18 U.S.C. § 641<br>18 U.S.C. § 981(a)(1)(C)<br>18 U.S.C. § 981(a)(6)(a)<br>18 U.S.C. § 982(a)<br>18 U.S.C. § 1028(a)(1)<br>18 U.S.C. § 1028(b)<br>18 U.S.C. § 1028A<br>18 U.S.C. § 1343<br>18 U.S.C. § 1542<br>28 U.S.C. § 2461(c) |

The Grand Jury charges:

## GENERAL ALLEGATIONS

At all times relevant to the Indictment:

1. The Defendant, FNU LNU, represented himself to be a citizen of the United States and resident of California and Idaho under the name Carlos Ramon Obregon.

2. Carlos Ramon Obregon, born in the early 1960s, was a real person who was a citizen of the United States born in Los Angeles, California, but who became deceased in Los Angeles in the late 1970s, also referred to herein as the "Decedent."

3. The Social Security Administration (SSA) was an agency of the federal government that, among other things, administered several benefit programs, including Supplemental Security Income (SSI) benefits. SSI benefits were intended to provide income to qualifying adults; the aged, blind, or disabled, who have little or no income and resources. SSI benefits were funded by the United States Government.

4. The Idaho Medicaid program was a cooperative federal/state program funded predominantly with United States Government funds. The Centers for Medicaid & Medicare Services (CMS), a component of the United States Department of Health and Human Services (HHS), was responsible for Medicaid program administration at the federal level. The Idaho Department of Health and Welfare (IDHW) was responsible for administering Medicaid in Idaho. Generally, Medicaid helped to pay for reasonable and medically necessary services for qualifying individuals who were deemed eligible under state low-income programs.

5. Under the umbrella of Medicaid, IDHW also administered Aid to the Aged, Blind, or Disabled (AABD). AABD benefits were intended to provide cash assistance for qualifying individuals who are 65 or older, blind, or disabled. AABD payments were funded, in part, by the United States Government.

6. The Supplemental Nutrition Assistance Program (SNAP), formerly known as the Food Stamp Program, is a United States Department of Agriculture (USDA) food assistance program for low-income individuals and families. SNAP provides United States Government funds to state governments that subsequently distribute the money to qualifying individuals and families for the purchase of food. In Idaho, IDHW is responsible for administering SNAP.

7. Starting in or about March 2020 until in or about April 2021, the United States Treasury made direct payments to qualifying adults because of the COVID-19 pandemic, referred to as Economic Impact Payments.

**COUNTS ONE THROUGH THREE**
**Wire Fraud**
**18 U.S.C. § 1343**

8. The allegations set forth in paragraphs 1 through 7 are re-alleged and incorporated as though set forth in full herein.

9. From a date unknown, but from at least on or about April 2000 until on or about August 2025, the Defendant, FNU LNU, knowingly devised, participated in, and intended to devise a scheme to defraud department and agencies of the United States Government and State of Idaho; to wit, SSA, HHS, CMS, USDA, U.S. Treasury, U.S. State Department, IDHW, and Idaho Transportation Department, and other federal and state departments and agencies, as to material matters, and to obtain money and property; to wit, public assistance benefits and government identification documents, including SSI, Medicaid, SNAP, AABD, Economic Impact Payments, U.S. Passport, and Idaho state identification cards, by means of materially false and fraudulent pretenses, representations, and promises.

***Manner and Means***

10. In order to further the objects and goals of the scheme, the Defendant used the following manner and means, among others:

11. In or about April 2000, January 2003, February 2009, and May 2024, FNU LNU applied for and obtained replacement social security cards in the name of the Decedent.

12. In or about September 2012, FNU LNU applied for a passport using the Decedent's identity, and he was awarded a passport in the name of the Decedent shortly thereafter. On or about May 14, 2024, FNU LNU applied to renew the passport.

13. In or about September 2002, September 2010, December 2014, and June 14, 2022, FNU LNU applied for and obtained Idaho state identification cards using the Decedent's identity.

14. In or about October 2003, FNU LNU applied for SSA benefits using the Decedent's identity. In or about July 2004, the SSA approved FNU LNU's application for SSI payments in Decedent's name to begin shortly thereafter. The Defendant continued to receive SSI payments until or about at least July 2025. Since at least January 2015, these payments were made by direct deposit to a bank account in the name of the Decedent that was controlled by the Defendant.

15. In or about January 2005, FNU LNU applied for Medicaid benefits using the Decedent's identity, which IDHW approved. Between in or about January 2005 and at least in or about June 2025, FNU LNU received Medicaid benefits in the name of the Decedent.

16. In or about February 2009, FNU LNU applied for and received SNAP benefits using the Decedent's identity from IDHW. FNU LNU continued to receive SNAP benefits until at least in or about June 2025.

17. In or about February 2011, FNU LNU applied for and received AABD benefits using the Decedent's identity from IDHW. FNU LNU continued to receive AABD benefits until at least in or about June 2025.

18. FNU LNU received Economic Impact Payments in the name of the Decedent in or about May 2020, January 2021, and April 2021.

### *Executions of the Scheme*

19. On or about the dates set forth below, in the District of Idaho and elsewhere, the Defendant, FNU LNU, for the purpose of executing the scheme described above, and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce writings, signals, and sounds, specifically SSI benefits transferred in interstate commerce by means of wire communications from the United States Treasury to FNU LNU's bank account, as more particularly described for each count below:

| COUNT | DATE | WIRE |
|---|---|---|
| 1 | 1/31/2025 | $967 wire transfer for SSI benefits to FNU LNU bank account |
| 2 | 2/28/2025 | $967 wire transfer for SSI benefits to FNU LNU bank account |
| 3 | 4/1/2025 | $967 wire transfer for SSI benefits to FNU LNU bank account |

All in violation of Title 18, United States Code, Section 1343.

### **COUNT FOUR**
### **Theft of Government Funds**
### **18 U.S.C. § 641**

20. From in or about July 2004 up to and including in or about July 2025, in the District of Idaho and elsewhere, the Defendant, FNU LNU, on a recurring basis, did knowingly embezzle, steal, purloin, and convert to his own use and the use of another, money belonging to the United States and a department and agency thereof in a total amount greater than $1,000, to wit: SSI benefits paid to FNU LNU in the name of the Decedent, with the intent to deprive the United States of the use and benefit of the money, in violation of Title 18, United States Code, Section 641.

**COUNT FIVE**
**Theft of Government Funds**
**18 U.S.C. § 641**

21. From in or about January 2005 up to and including in or about July 2025, in the District of Idaho and elsewhere, the Defendant, FNU LNU, on a recurring basis, did knowingly steal, purloin, and convert to his own use and the use of another, money belonging to the United States and a department and agency thereof in a total amount greater than $1,000, to wit: Medicaid benefits paid for the benefit of FNU LNU in the name of the Decedent, with the intent to deprive the United States of the use and benefit of the money, in violation of Title 18, United States Code, Section 641.

**COUNT SIX**
**Theft of Government Funds**
**18 U.S.C. § 641**

22. From in or about February 2009 up to and including in or about July 2025, in the District of Idaho and elsewhere, the Defendant, FNU LNU, on a recurring basis, did knowingly steal, purloin, and convert to his own use, money belonging to the United States and a department and agency thereof in a total amount greater than $1,000, to wit: SNAP benefits paid to FNU LNU in the name of the Decedent, with the intent to deprive the United States of the use and benefit of the money, in violation of Title 18, United States Code, Section 641.

**COUNT SEVEN**
**Theft of Government Funds**
**18 U.S.C. § 641**

23. From in or about February 2021 up to and including in or about July 2025, in the District of Idaho and elsewhere, the Defendant, FNU LNU, on a recurring basis, did knowingly steal, purloin, and convert to his own use, money belonging to the United States and a department and agency thereof in a total amount greater than $1,000, to wit: AABD benefits paid

to FNU LNU in the name of the Decedent, with the intent to deprive the United States of the use and benefit of the money, in violation of Title 18, United States Code, Section 641.

**COUNT EIGHT**
**Theft of Government Funds**
**18 U.S.C. § 641**

24. From in or about May 2020 up to and including in or about April 2021, in the District of Idaho and elsewhere, the Defendant, FNU LNU, on a recurring basis, did knowingly steal, purloin, and convert to his own use, money belonging to the United States and a department and agency thereof in a total amount greater than $1,000, to wit: Economic Impact Payments paid to FNU LNU in the name of the Decedent, with the intent to deprive the United States of the use and benefit of the money, in violation of Title 18, United States Code, Section 641.

**COUNT NINE**
**False Statement in Application and Use of Passport**
**18 U.S.C. § 1542**

25. On or about May 14, 2024, in the District of Idaho and elsewhere, the Defendant, FNU LNU, did willfully and knowingly make a false statement in an application for a passport with intent to induce and secure for his own use the issuance of a passport under the authority of the United States; to wit, FNU LNU represented himself to be the Decedent, contrary to the laws regulating the issuance of such passports and the rules prescribed pursuant to such laws, which statement he knew to be false, in violation of Title 18, United States Code, Section 1542.

**COUNT TEN**
**Fraud in Connection with Identification Documents—Production**
**18 U.S.C. §§ 2 and 1028(a)(1)**

26. On or about June 14, 2022, in the District of Idaho and elsewhere, the Defendant, FNU LNU, did knowingly and without lawful authority produce an identification document and

false identification document, to wit, an Idaho state identification card in the name of Decedent, which was in and affected interstate and foreign commerce, in violation of 18 U.S.C. §§ 1028(a)(1) and 2.

**COUNTS ELEVEN THROUGH TWENTY**
**Aggravated Identity Theft**
**18 U.S.C. § 1028A**

27. The allegations set forth in paragraphs 1 through 26 are re-alleged and incorporated as though set forth in full herein.

28. On or about the dates listed in Counts One through Ten, in the District of Idaho, the Defendant, FNU LNU, did knowingly possess, transfer, and use, without lawful authority, a means of identification of another person during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), knowing that the means of identification belonged to another person, described below for each count:

| AGGRAVATED IDENTITY THEFT COUNT | ENUMERATED FELONY VIOLATION | MEANS OF IDENTIFICATION |
|---|---|---|
| Count 11 | Count 1 | Decedent's identity |
| Count 12 | Count 2 | Decedent's identity |
| Count 13 | Count 3 | Decedent's identity |
| Count 14 | Count 4 | Decedent's identity |
| Count 15 | Count 5 | Decedent's identity |
| Count 16 | Count 6 | Decedent's identity |
| Count 17 | Count 7 | Decedent's identity |
| Count 18 | Count 8 | Decedent's identity |
| Count 19 | Count 9 | Decedent's identity |
| Count 20 | Count 10 | Decedent's identity |

All in violation of Title 18, United States Code, Section 1028A(a)(1).

**CRIMINAL FORFEITURE ALLEGATIONS**
**Fraud Forfeiture**
**18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 981(a)(6)(a), 18 U.S.C. § 982(a), 18 U.S.C. § 1028(b), and 28 U.S.C. § 2461(c)**

1. Upon conviction of the offenses alleged in Counts One through Ten, the Defendant, FNU LNU, shall forfeit to the United States any and all property, real and personal, tangible and intangible, consisting or derived from any proceeds the said defendant obtained directly or indirectly as a result of the foregoing offenses. The property to be forfeited includes, but is not limited to, the following:

2. Unrecovered Cash Proceeds and/or Facilitating Property. The Defendant obtained and controlled unrecovered proceeds of the offense of conviction, or property derived from or traceable to such proceeds, but based upon actions of the defendant, the property was transferred, diminished, comingled, or is otherwise unavailable. The defendant obtained and controlled at least $281,138.20 in unrecovered forfeitable property.

3. Property Referenced in Title 18 U.S.C. § 1028. Any false documents, document making implements, other property used, or intended to be used, to commit the offense, as referenced in 18 U.S.C. § 1028.

4. Substitute Assets. Pursuant to 21 U.S.C. § 853(p) and other applicable statutes, the government will seek forfeiture of substitute assets, "or any other property of the Defendant" up to the value of the Defendant's assets subject to forfeiture. The government will do so when the property subject to forfeiture cannot be forfeited for one or mor of the following reasons:

a. Cannot be located upon the exercise of due diligence;

b. Has been transferred or sold to, or deposited with, a third person;

c. Has been placed beyond the jurisdiction of the court;

d. Has been substantially diminished in value; or

e. Has been commingled with other property which cannot be subdivided without difficulty.

Dated this 12th day of August 2025.

A TRUE BILL

*/s/ [signature on reverse]*

FOREPERSON

JUSTIN D. WHATCOTT
ACTING UNITED STATES ATTORNEY
By:

SEAN M. MAZOROL
ASSISTANT UNITED STATES ATTORNEY